UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| ARIANA MASON, | Case No. 2:15-CV-738 JCM (NJK) |
| Plaintiff(s), | ORDER |
| v. | |
| OFFICER S. IZZO, et al., | |
| Defendant(s). | |

Presently before the court is a motion for summary judgment filed by defendants Las Vegas Metro Police Department ("LVMPD") and officer S. Izzo. (ECF No. 19). Plaintiff Ariana Mason filed a response (ECF No. 22), to which defendants replied (ECF No. 25).

**I.     Facts**

This is a 42 U.S.C. § 1983 action alleging violations of the Fourth, Fifth, and Fourteenth Amendments. The case arises from an altercation that occurred in front of 1OAK Nightclub ("1OAK") inside of the Mirage Hotel & Casino ("Mirage") on August 15, 2014. (ECF No. 1). On that night, plaintiff's boyfriend performed at 1OAK as part of an event. (ECF No. 1). Shortly after the performance, an altercation broke out between those associated with the event, including plaintiff, and the security officers of 1OAK and Mirage. (ECF No. 1).

During the altercation, plaintiff grabbed a female security officer in an attempt to separate the officer from plaintiff's friend. (ECF No. 1 at 4). Thereafter, officer Izzo pulled plaintiff off of the security officer and eventually wrestled her to the ground, placing her in a choke hold. (ECF No. 1 at 4–5). Officer Izzo then attempted to bring plaintiff to her feet, during which she resisted and punched him several times. (ECF No. 1 at 5). After being wrestled to the ground, plaintiff was handcuffed with her hands behind her back. (ECF Nos. 1 at 5; 19 at 2).

1  Shortly thereafter, plaintiff was brought back to her feet and the situation slightly
2  deescalated. (ECF No. 1 at 5). Officer Izzo walked plaintiff to a nearby table and placed her upper
3  body on top of the table. (ECF No. 1 at 5). Plaintiff then whipped her upper body back towards
4  officer Izzo, to which he responded by slamming her upper body back onto the table. (ECF Nos.
5  1 at 5–6; 19 at 2–3). Upon slamming plaintiff's upper body back onto the table, plaintiff's face
6  struck a cocktail glass, which later required several stiches. (ECF Nos. 1 at 6; 19 at 3).

After being treated for her injuries, plaintiff was transported to the Clark County Detention Center and booked for battery on a protected person (officer Izzo). (ECF No. 1 at 6). The battery charge was later dismissed by the state. (ECF No. 1 at 6).

Plaintiff filed the underlying complaint alleging six causes of action: (1) civil rights violations under 42 U.S.C. § 1983; (2) municipal liability under 42 U.S.C. § 1983; (3) negligence; (4) negligent supervision and training; (5) intentional infliction of emotional distress; and (6) battery. (ECF No. 1).

In the instant motion, defendants move for summary judgment as to all claims. (ECF No. 19).

**II.  Legal Standard**

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the nonmoving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to withstand summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward

James C. Mahan
U.S. District Judge

- 2 -

with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a dispute of material fact conclusively in its favor. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Id.*

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether a genuine dispute exists for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the

**James C. Mahan**
**U.S. District Judge**

- 3 -

nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

## III. Discussion

### A.  42 U.S.C. § 1983

Title 42 U.S.C. § 1983 provides a cause of action for the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States.  "To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of State law." *Long v. Cnty. of L.A.*, 442 F.3d 1178, 1185 (9th Cir. 2006).

As an initial matter, the second element has been satisfied as defendants concede that the alleged actions were committed under color of law. (ECF Nos. 6 at 2; 19 at 14).  Thus, the focus of the court's analysis turns to the first element—whether the right plaintiff alleges that officer Izzo violated is a right secured by the Constitution or laws of the United States.

Plaintiff's § 1983 claim against officer Izzo is premised on the allegation that the amount of force he applied to seize her was unlawfully excessive in violation of the Fourth Amendment. (ECF No. 1 at 17).  In particular, plaintiff alleges that officer Izzo's conduct—*i.e.*, applying a chokehold and smashing her face into the table—exceeded the amount of force reasonably necessary under the circumstances to bring her under control. (ECF No. 1 at 17).

In the instant motion, defendants assert that officer Izzo is entitled to qualified immunity. (ECF No. 19 at 14–15).

#### 1. *Qualified Immunity*

When a plaintiff brings a claim under 42 U.S.C. § 1983, government officials sued in their individual capacities may raise the affirmative defense of qualified immunity. *See, e.g.*, *Spoklie v. Montana*, 411 F.3d 1051, 1060 (9th Cir. 2005); *Goodman v. Las Vegas Metro. Police Dep't*, 963 F. Supp. 2d 1036, 1058 (D. Nev. 2013).  Qualified immunity protects law enforcement officials "from liability for civil damages insofar as their conduct does not violate clearly established

James C. Mahan
U.S. District Judge

- 4 -

statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

"Qualified immunity balances two important interest—the need to hold public officials accountable when they exercise power irresponsibly, and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "The principles of qualified immunity shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law." *Id.* at 244. It allows for officials to make reasonable mistakes regarding the lawfulness of their conduct by excusing reasonable mistakes. *See id.* at 231.

Deciding whether an officer is entitled to qualified immunity is a two-prong inquiry. First, the court assesses whether the plaintiff has alleged or shown a violation of a constitutional right. *Id.* at 232. Second, the court decides whether the right at issue was clearly established at the time of the defendant's alleged misconduct. *Id.*

Here, the first prong focuses on whether, in viewing the facts in the light most favorable to plaintiff and under the totality of the circumstances, officer Izzo's conduct violated plaintiff's Fourth Amendment right against unreasonable seizures.

It is well-settled that the Fourth Amendment applies to state action through the Fourteenth Amendment. *Elkins v. United States*, 364 U.S. 206, 213 (1960) (citing to *Wolf v. Colorado*, 338 U.S. 25, 27–28 (1949)). The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized.

U.S. Const. amend. IV. The constitutionality of a seizure requires a careful balance of "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *United States v. Place*, 462 U.S. 696, 703 (1983).

The second prong focuses on whether, at the time of the alleged violation, a reasonable officer would have known, based on "clearly established" authority, that the conduct at issue

violated a constitutional right. *See, e.g.*, *Mattos v. Agarano*, 661 F.3d 433, 442 (9th Cir. 2011) ("For the second step in the qualified immunity analysis—whether the constitutional right was clearly established at the time of the conduct—we ask whether its contours were sufficiently clear that every reasonable official would have understood that what he is doing violates that right." (internal quotation marks and citations omitted)).

"The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer in the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). The court must allow "for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Mattos*, 661 F.3d at 442 (quoting *Graham*, 490 U.S. at 396–97).

The Supreme Court has instructed that district judges may use their discretion in deciding which qualified immunity prong to address first based on the circumstances of the case at issue. *See Pearson*, 555 U.S. at 236. Accordingly, the court will turn first to the second prong of the qualified immunity test to determine whether the right plaintiff claims officer Izzo violated was "clearly established."

### a. Clearly Established

The second "clearly established" prong of the qualified immunity analysis involves the issue of "fair warning"—specifically, whether prior decisions gave reasonable warning that the conduct at issue violated a constitutional right. *See Brosseau v. Haugen*, 543 U.S. 194, 199 (2004) (per curiam). "[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: [t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Thus, the dispositive question is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id*.

In *Saucier v. Katz*, the Court was evaluating the clearly established standard in the same context as this case—excessive force. The Court reasoned:

> The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct. It is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts. An officer might correctly perceive all of the relevant facts but have a mistaken understanding as to whether a particular amount of force is legal in those circumstances. If the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense.

*Id.*

Later, in *Ashcroft v. al-Kidd*, the Court further emphasized that lower courts should not define "clearly established" law at a high level of generality. 131 S. Ct. 2074, 2084 (2011). "The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of the particular conduct is clearly established." *Id.*

In the Ninth Circuit, a court begins its inquiry of whether a right is clearly established by looking to binding precedent on the allegedly violated right. *Boyd v. Benton Cnty.*, 374 F.3d 773, 781 (9th Cir. 2004). "While [w]e do not require a case directly on point, existing precedent must have placed the statutory or constitutional question beyond debate." *Mattos*, 661 F.3d at 442 (internal quotation marks and citation omitted).

Defendants argue that officer Izzo applied intermediate force, which was lawful as plaintiff was actively resisting. (ECF No. 19 at 22). In response, plaintiff contends that the force officer Izzo applied was excessive given the fact that she was handcuffed at the time, not resisting, and surrounded by security guards. (ECF No. 22 at 19).

Viewing the facts in this case in the light most favorable to plaintiff, her right to be secure against an unreasonable use of force under the circumstances is not "clearly established." Here, officer Izzo walked plaintiff, who was handcuffed at the time with security handcuffs, to a nearby table and placed her upper body against the table so as to switch from the security handcuffs to LVMPD-issued handcuffs. Immediately thereafter, plaintiff whipped her upper body up from the table toward officer Izzo. Attempting to subdue her, officer Izzo slammed plaintiff's upper body back down onto the table. The use of force resulted in injuries because plaintiff's face struck a nearby cocktail glass that was on the table upon officer Izzo slamming her upper body back onto the table.

**James C. Mahan**
**U.S. District Judge**

- 7 -

Plaintiff cites to *Davis v. City of Las Vegas* to support her argument that her right was clearly established. 478 F.3d 1048 (9th Cir. 2007). In *Davis*, the Ninth Circuit held that "swinging a handcuffed man into a wall head-first multiple times and then punching him in the face while he lay face-down on the ground, and breaking his neck as a result, was unnecessary and excessive." 478 F.3d at 1057. Here, the facts are distinguishable as plaintiff was not slammed into the table multiple times, nor was she punched.

Plaintiff also cites to *Tucker v. Las Vegas Metro. Police Dep't* in support of her argument. 470 F. App'x 627 (9th Cir. 2012). In *Tucker*, the Ninth Circuit held as follows: "A jury could, however, reasonably conclude that the officers used excessive force in tasing Keith and applying their body pressure to restrain him after he was handcuffed and face down on a bed." 470 F. App'x at 629. Again, here, the facts are distinguishable in that no taser was used and officer Izzo pressed plaintiff's upper body back onto the table only after she whipped back towards him.

The court finds that it would not be clear to a reasonable officer that Izzo's conduct was unlawful in the situation that he confronted. *See Saucier*, 533 U.S. at 202. No precedent placing the conclusion that officer Izzo's alleged conduct under the particular circumstances he confronted was unreasonable "beyond debate." *See al–Kidd*, 131 S. Ct. at 2083. Accordingly, plaintiff's right was not clearly established at the time of the alleged misconduct. *See Pearson*, 555 U.S. at 232.

b. *Constitutional Violation*

Having resolved the second prong of the qualified immunity inquiry in officer Izzo's favor, the court need not determine whether the constitutional right was violated under the first prong. *See id.* The qualified immunity doctrine shields officer Izzo from liability under for monetary damages under § 1983, and he is entitled to summary judgment on this claim.

**B. *Monell* Liability**

In her second claim for relief, plaintiff asserts that LVMPD is liable for any of officer Izzo's constitutional violations because it tolerated and ratified through its policies, practices, and customs its officers' use of excessive and unreasonable force. (ECF No. 1 at 8). In particular, plaintiff contends that the Internal Affairs Department of the LVMPD ratified officer Izzo's conduct by not disciplining him for smashing her face into the marble table after she was

James C. Mahan
U.S. District Judge

- 8 -

handcuffed and bent over a table. (ECF No. 1 at 8).  Plaintiff concludes that "[a]s a result of the LVMPD's failure to properly train and supervise its officers the LVMPD set in motion the series of events leading to the constitutional violations." (ECF No. 1 at 8).

The United States Supreme Court set forth the principal framework governing municipal liability for § 1983 actions in *Monell v. Department of Social Services*, 436 U.S. 658 (1978). "Municipalities are 'persons' under 42 U.S.C. § 1983 and thus may be liable for causing a constitutional deprivation." *Long v. City of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006) (citing *Monell*, 436 U.S. at 690).

Under *Monell*, "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell*, 436 U.S. at 694.  Rather, the government as an entity is responsible under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Id.*  Thus, for liability to attach, four conditions must be satisfied: "(1) that [the plaintiff] possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy 'amounts to deliberate indifference' to the plaintiff's constitutional right; and (4) that the policy is the 'moving force behind the constitutional violation.'" *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 835 (9th Cir. 1996) (alteration in original) (citations omitted).

Additionally, the Ninth Circuit has established a different formulation of *Monell* liability.

> A plaintiff may also establish municipal liability by demonstrating that (1) the constitutional tort was the result of a longstanding practice or custom which constitutes the standard operating procedure of the local government entity; (2) the tortfeasor was an official whose acts fairly represent official policy such that the challenged action constituted official policy; or, (3) an official with final policy-making authority delegated that authority to, or ratified the decision of, a subordinate.

*Price v. Sery,* 513 F.3d 962, 966 (9th Cir. 2008).

Constitutional harm from a municipality's failure to train its officers is cognizable under § 1983 and *Monell*, but the level of culpability is higher than under a state law failure-to-train claim based on a negligence theory:

> [T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact. . . . Only where a municipality's failure

James C. Mahan
U.S. District Judge

- 9 -

> to train its employees in a relevant respect evidences a "deliberate indifference" to the rights of its inhabitants can such a shortcoming be properly thought of as a city "policy or custom" that is actionable under § 1983.

*City of Canton v. Harris*, 489 U.S. 378, 388–89 (1989).

In their motion, defendants maintain that plaintiff has failed to set forth any evidence that the LVMPD's failure to properly train its officers or that the LVMPD ratified officer Izzo's conduct. (ECF No. 19 at 26). More specifically, defendants contend that the LVMPD has an exemplary use of force policy and that its officers undergo substantial training regarding the use of force. (ECF No. 19 at 27). Further, defendants argue that plaintiff failed to provide any evidence of ratification, noting that internal affairs investigated the incident and concluded that officer Izzo's actions were within policy. (ECF No. 19 at 27). In fact, defendants assert, plaintiff even stated during her deposition that she believed that internal affairs officers were fair with her. (ECF No. 19 at 27).

In response, plaintiff argues that officer Izzo was not reprimanded or disciplined and that her expert opined that "such conduct by the policy maker constitutes constitutional violation." (ECF No. 22 at 21).

"Proof of random acts or isolated events" does not fit within the meaning of custom in the *Monell* context. *See Davis v. City of Ellensburg*, 869 F.2d 1230 (9th Cir. 1989); *see also City of Okla. City v. Tuttle*, 471 U.S. 808, 824 (1985). It is well settled in the Ninth Circuit that a plaintiff cannot establish a *de facto* policy with a single constitutional violation. *See Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999).

Instead, the plaintiff's theory must be founded upon practices of "sufficient duration, frequency, and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996); *see also McDade v. West*, 223 F.3d 1135 (9th Cir. 2000). Indeed, "a plaintiff may be able to prove the existence of a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 168 (1970).

James C. Mahan
U.S. District Judge

- 10 -

Based on the foregoing, the court will grant defendants' motion for summary judgment as to plaintiff's *Monell* claim.

### C.  State Law Claims

Plaintiff alleges state law claims for negligence, negligent supervision and training, IIED, and battery.  (ECF No. 1).

Defendants primarily rest their summary judgment request on the remaining state law claims on the discretionary-function exception to Nevada's waiver of sovereign immunity.  (ECF No. 19 at 28–29).

#### *1.  Discretionary-Function Exception*

Nevada has waived its general state immunity under NRS 41.031.  Section 41.032(2) of the Nevada Revised Statutes provides, in relevant part, that no tort shall be brought:

> Based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the state or any of its agencies or political subdivisions or of any officer, employee or immune contractor of any of these, whether or not the discretion involved is abused.

Nev. Rev. Stat. § 41.032(2).

This is known as the "discretionary-function" exception.  The Nevada Supreme Court has adopted the same test as the federal test for the discretionary function exception.  *Martinez v. Maruszczak*, 168 P.3d 720, 729 (Nev. 2007).  To fall within the scope of discretionary-act immunity, an employee's decision "must (1) involve an element of individual judgment or choice and (2) be based on considerations of social, economic, or political policy."  *Id.*  "[D]ecisions at all levels of government, including frequent or routine decisions, may be protected by discretionary-act immunity . . . ."  *Id.*

Nevada looks to federal decisional law on Federal Tort Claims Act for guidance on the type of conduct protected by the discretionary function exception.  *Id.* at 727–29.  "[F]ederal courts applying the *Berkovitz-Gaubert* test must assess cases on their facts, keeping in mind Congress' purpose in enacting the exception: to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort."  *Id.* at 729 (quoting *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 814 (1984)) (internal quotation marks omitted).

James C. Mahan
U.S. District Judge

- 11 -

### a. LVMPD

Defendants contend that "[a]t a minimum, Mason's negligent supervision and training claim (fourth cause of action fails) is covered by discretionary immunity." (ECF No. 19 at 29).

The court agrees. Plaintiff has alleged that LVMPD failed to adequately train and supervise officer Izzo and other officers regarding seizures, restraints, and use of force. (ECF No. 1 at 9–10). However, the decision of which police officers to hire, and how to train and supervise them, are an integral party of governmental policy-making or planning. *See, e.g.*, *Hodges v. Las Vegas Metro. Police Dep't*, No. 213CV2014JCMNJK, 2016 WL 4697340, at *10 (D. Nev. Sept. 6, 2016). Therefore, the discretionary-function exception bars plaintiff's claim for negligent training and supervision against LVMPD.

Further, the Ninth Circuit and other federal circuits have held "that decisions relating to the hiring, training, and supervision of employees usually involve policy judgments of the type Congress intended the discretionary function to shield." *Vickers v. United States*, 228 F.3d 944, 950 (9th Cir. 2000) (collecting cases); *see also Neal-Lomax v. Las Vegas Metro. Police Dep't*, 574 F. Supp. 2d 1170, 1192 (D. Nev. 2008), *aff'd*, 371 F. App'x 752 (9th Cir. 2010) (holding that LVMPD is entitled to discretionary immunity on the negligent training and supervision claim).

Because Nevada looks to federal case law to determine the scope of discretionary immunity and because federal case law consistently holds training and supervision are acts entitled to such immunity, LVMPD is entitled to discretionary immunity on this claim. Accordingly, the court will grant defendants' motion for summary judgment as to plaintiff's cause of action for negligent supervision and training.

### b. Officer Izzo

To qualify for discretionary-act immunity, officer Izzo's decision must (1) involve an element of individual judgment or choice and (2) be based on considerations of social, economic, or political policy. *See Martinez*, 168 P.3d at 729).

Police officers "exercise[ ] discretion and [are] thus generally immune from suit where the act at issue require[s] 'personal deliberation, decision, and judgment,' rather than 'obedience to orders, or the performance of a duty in which the officer is left no choice of his own.'" *Sandoval*

**James C. Mahan**
**U.S. District Judge**

- 12 -

*v. Las Vegas Metro. Police Dep't*, 756 F.3d 1154, 1168 (9th Cir. 2014) (citing *Davis*, 478 F.3d at 1059). Further, "acts which violate the Constitution are not discretionary." *Estate of Sauceda ex rel. Sauceda v. City of N. Las Vegas*, No. 2:11-cv-02116-APG-NJK, 2015 WL 871611, at *9 (Mar. 2), *reconsideration denied*, No. 2:11-cv-02116-GMN-NJK, 2015 WL 7737338 (D. Nev. Dec. 1, 2015).

Immunity attaches under the second criterion "if the injury-producing conduct is an integral part of governmental policy-making or planning, if the imposition of liability might jeopardize the quality of the governmental process, or if the legislative or executive branch's power or responsibility would be usurped." *Martinez*, 168 P.3d at 729. The trial court does not determine a police officer's "subjective intent in exercising the discretion conferred by statute or regulation, but [rather focuses] on the nature of the actions taken and on whether they are susceptible to policy analysis." *Id.* at 728 (quoting *United States v. Gaubert*, 499 U.S. 315, 325 (1991)).

With respect to the first prong of the *Martinez* test, officer Izzo's decisions regarding the amount of force necessary under the circumstances are discretionary acts because those decisions involve elements of individual judgment and choice. Evaluating how much force is necessary at any given moment involves examining the totality of the circumstances and making moment-to-moment decisions in a rapidly evolving situation. *See Graham*, 490 U.S. at 394–96. Officer Izzo's decisions were therefore discretionary in nature.

Officer Izzo's conduct, however, fails to meet the requirements of the second prong of the *Martinez* test. His decision regarding the appropriate degree of force to use did not involve any social, economic, or policy considerations within the meaning of *Martinez*. *See* 168 P.3d at 728, *see also Vasquez-Brenes v. Las Vegas Metro. Police Dep't*, 51 F. Supp. 3d 999, 1013 (D. Nev. 2014) (applying *Martinez* to a police offer's decision regarding the level of force to use), *rev'd and remanded on other grounds*, No. 14-16939, 2016 WL 6648698 (9th Cir. Nov. 10, 2016). The level or degree of force that officers choose to use on a case-by-case basis is not an "integral part of governmental policy-making or planning." *Vasquez-Brenes*, 51 F. Supp. 3d at 1013 (quoting *Martinez*, 168 P.3d at 729). This court has reasoned that "imposing liability on officers who

**James C. Mahan**
**U.S. District Judge**

- 13 -

exceed the permissible use of force does not jeopardize the quality of the governmental process." *Id.*

Therefore, officer Izzo does not qualify for discretionary immunity with respect to plaintiff's state law claims for negligence, IIED, and battery. Accordingly, the court will deny defendants' motion for summary judgment as to plaintiff's claims for negligence, IIED, and battery against officer Izzo.

### IV. Conclusion

In sum, the court will grant defendants' motion for summary judgment as to plaintiff's § 1983, *Monell*, and negligent training and supervision claims, but will deny summary judgment as to the negligence, IIED, and battery claims.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendants' motion for summary judgment (ECF No. 19) be, and the same hereby is, GRANTED IN PART and DENIED IN PART consistent with the foregoing.

DATED December 22, 2016.

_____
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**

- 14 -